IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THOMAS A. PACE, KAROL PACE, heirs of ANGIE PUTNAM, deceased,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>BARRY N. SWERDLOW, M.D.<br><br>　　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  2:06CV27DAK |

This matter is before the court on Defendant Barry N. Swerdlow's Motion to Dismiss. The court held a hearing on the motion on April 26, 2006.  At the hearing, Plaintiffs were represented by Kenneth Ivory and Defendant was represented by Kevin Murphy.  The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties, the parties' arguments at the hearing, and the law and facts relating to these motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiffs Thomas and Karol Pace brought this lawsuit asserting seven causes of action against Dr. Barry N. Swerdlow, an expert witness they had retained in an unsuccessful medical malpractice case, *Pace v. Sellers, et al.*, Third Judicial District Court for the State of Utah, Civil No. 030906272.  The causes of action asserted against Dr. Swerdlow in this action include: professional malpractice, fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract, tortious breach of the implied covenant of good faith and fair dealing, and negligent

infliction of emotional distress. Plaintiffs also seek punitive damages under several of these causes of action.

Plaintiffs brought the underlying medical malpractice action because their daughter, Angie Putnam, died following out-patient surgery at the IHC Surgical Center in Salt Lake City. The defendant in that action, Dr. Shuput, was the attending anesthesiologist for the surgery. After the surgery, Dr. Shuput discharged Putnam late that evening even though she complained of her pain being a 9 on a scale of 10. Putnam died that night at the home of a friend with whom she was staying. The exact cause of death was never determined.

In the medical malpractice action, Plaintiffs retained Swerdlow, an anesthesiologist, to serve as their medical expert. Swerdlow received documents relating to Putnam's medical care and treatment. After reviewing those documents, Swerdlow and Plaintiffs' counsel prepared an affidavit containing Swerdlow's opinions of the medical care provided to Putnam. Plaintiffs' counsel drafted an affidavit and Swerdlow edited it. In the affidavit, Swerdlow opined that Dr. Shuput had breached applicable care standards by discharging Putnam instead of sending her to a nearby hospital for overnight observation. Swerdlow opined that because of her postoperative complaints of a 9 out of 10 pain and difficulty breathing, Putnam should have been hospitalized overnight. Furthermore, Dr. Swerdlow opined that "if Angie had been monitored overnight, it is very likely that she would be alive today." This statement was Dr. Swerdlow's own words. The original language prepared by counsel was that "if Angie had been monitored overnight, she would be alive today." The Affidavit further states a few lines below that Putnam died "as a direct and proximate result of her premature discharge." Swerdlow did not alter this sentence.

On November 24, 2004, Plaintiff's counsel filed a Cerfiticate of Readiness for Trial. On

January 4, 2005, Dr. Shuput's counsel took Swerdlow's deposition.  Swerdlow testified that his "ultimate opinion here is that discharging this patient with severity of pain, as documented in the PACU record, was not something that a prudent physician in Dr. Shuput's situation should have done."  Dr. Swerdlow also testified that he could not say, with a reasonable degree of medical certainty, that Angie would have survived if she had been hospitalized, only that there would have been an increased probability that she would be alive today.  Plaintiffs claim that this testimony deviates from the statements in Swerdlow's affidavit.

Plaintiffs also base many of their claims in this action on statements in Swerdlow's deposition in which he stated that he had jet lag and that he was a novice.  The jet lag comment was made in a statement in which Swerdlow was asking to have a question restated or clarified.  And, the novice statement was made in response to a question regarding whether Swerdlow had thought to ask if Dr. Shuput's depositions had already been taken.

At the time of his deposition, Swerdlow had not read the deposition of Dr. Shuput, nor the deposition of the two nurses who had attended Angie following her surgery.  Swerdlow states that he obtained those depositions from Plaintiffs' counsel after his deposition and reviewed them.  The Complaint also states that he requested these depositions from counsel in the context of a telephone conversation he had with counsel after the deposition.  However, Plaintiffs claim in their opposition to this motion that the depositions had been sent to Swerdlow before his deposition and that he failed to read them.

During Swerdlow's telephone conversation with Plaintiffs' counsel after the deposition, Swerdlow also allegedly stated that Dr. Shuput's counsel was mean and that he threatened to go after his license.  Swerdlow does not agree with the statement regarding his license.  Rather, he

3

claims that Dr. Shuput's counsel threatened to report him to the American Society of Anesthesiologist's, a professional organization that provides policy guidelines but has no power with respect to licensure.

Approximately a month after his deposition, Swerdlow executed an errata page and supplemented that errata page with an Addendum, dated February 6, 2005. In his Addendum, Swerdlow modified his opinion with respect to the standard of care to state that Dr. Shuput's decision to discharge Angie Putnam from the surgery center was within the standard of care.

Two days before Swerdlow executed his Addendum, Dr. Shuput filed a motion for summary judgment. Dr. Shuput argued that Plaintiffs could not prove a causal link between the care rendered and Putnam's death. Plaintiffs' counsel did not file a memorandum in opposition to Dr. Shuput's motion for summary judgment. At a hearing ten days later, Plaintiffs were granted one week to file their opposing memorandum. Rather than filing a memorandum opposing summary judgment, Plaintiffs' counsel filed a request for continuance of the summary judgment pleadings and of the then-impending trial in order to find a new expert witness. Plaintiffs attached Swerdlow's Addendum to this request.

Two days later, the state court issued a Minute Entry denying Plaintiffs' request for continuance and granting Dr. Shuput's motion for summary judgment. About six weeks later, the state court entered its formal Summary Judgment and Order. The court granted Dr. Shuput's motion for summary judgment "for the reasons and upon the grounds stated therein and for the reason that Dr. Swerdlow's testimony and addendum fail to meet the grounds necessary to pursue any malpractice claim against Dr. Shuput." Plaintiffs did not seek reconsideration of or appeal the state court's decision.

**DISCUSSION**

Swerdlow seeks dismissal of Plaintiffs' Complaint arguing that all of Plaintiffs' claims are barred by the witness immunity doctrine and barred because Swerdlow's modified opinion was not the proximate cause of the dismissal of the malpractice case. Swerdlow also argues that each claim fails independently as a matter of law. The applicability of the witness immunity doctrine to an expert witness presents an issue of first impression under Utah law. Because the court determines that it does not need to reach the immunity issue if there was no liability as a matter of law, the court will first analyze whether Swerdlow's alleged change of opinion was the proximate cause of the dismissal of the underlying medical malpractice action.

Swerdlow argues that Plaintiffs cannot demonstrate as a matter of law that he caused the dismissal of the malpractice action. Because Plaintiffs attached several exhibits from the underlying action to their Complaint, the court can consider those materials and all of the materials referenced in the Complaint on this motion to dismiss. The court can also take judicial notice of all the materials in the state court's file.

Dr. Shuput's motion for summary judgment was filed before Swerdlow executed his Addendum. The motion focused on the lack of a causal connection between Dr. Shuput's allegedly improper decision to discharge Angie Putnam and her subsequent death. Swerdlow contends that prior to his deposition, Dr. Shuput's motion for summary judgment, and the execution of his Addendum to the deposition, his opinion on causation in his affidavit was not strong enough to overcome summary judgment. Plaintiffs contend that the affidavit was enough to defeat summary judgment and Swerdlow's alleged change of position in his deposition and his

Addendum caused the state court judge to grant judgment in favor of Dr. Shuput.[1]

There are two critical statements in Swerdlow's Affidavit regarding causation. First, Dr. Swerdlow opined that "if Angie had been monitored overnight, it is very likely that she would be alive today." This statement was Dr. Swerdlow's own words. Dr. Swerdlow changed the original language prepared by counsel, which stated that "if Angie had been monitored overnight, she would be alive today." The Affidavit then states a few lines later that Angie died "as a direct and proximate result of her premature discharge." This sentence was drafted by counsel and Swerdlow did not alter this sentence.

The two statements in the Affidavit regarding causation conflict. The first sentence does not state that Angie would be alive today if she had not been discharged. The statement is only that it was very likely that she would be alive today if she had been hospitalized. However, the second sentence with regard to causation clearly states that she died because of her premature discharge. This conflict should have been apparent to Plaintiffs' counsel when Swerdlow edited the language of the first statement. Swerdlow's edits to the first statement altered the strength of the statement. Upon examination at his deposition, it became apparent that Swerdlow could not state that the cause of Putnam's death was because of her discharge within a medical probability. Plaintiffs could have been aware of this position before Swerdlow's deposition if they had followed up with him after he made the edits to the affidavit.

---

[1] The parties appear to agree that Swerdlow's testimony that Dr. Shuput breached the standard of care did not change until Swerdlow issued his Addendum after his deposition. That Addendum, however, was not referenced by Dr. Shuput's counsel in his Motion for Summary Judgment. The Addendum was only submitted to the state court by Plaintiffs in connection with their request for a continuance.

The statements regarding causation were absolutely necessary on summary judgment because Plaintiffs could not establish the physiological cause of Angie's death. By stipulation in the underlying action, the parties' counsel had agreed not to admit a medical examiner's report suggesting that an overdose of prescribed opiate pain medication had caused the death. In addition, Plaintiffs' other expert, a pathologist, had only opined that a congenital heart defect was not the cause of death. Under Utah law, expert testimony was required to establish causation when the link was not obvious. Therefore, for Swerdlow's Affidavit to defeat summary judgment, it needed to clearly establish causation. This court cannot conclude that an Affidavit with conflicting statements regarding causation could have allowed the case to survive summary judgment even before Swerdlow's deposition. The alleged change in position during the deposition and in the Addendum, therefore, is irrelevant. Plaintiffs' never established a case strong enough to withstand summary judgment.

Furthermore, Swerdlow contends that the cause of the dismissal is as much a result of Plaintiffs' counsel's failure to file a memorandum in opposition to the motion as to anything he did. Plaintiffs received a week from the time of the hearing from the state court judge in which to file a responsive memorandum. Plaintiffs did not submit a memorandum addressing the legal or factual issues in the case. Instead, they requested a continuance. Although it may have been reasonable to expect that the state court judge would have granted a continuance in that situation, Plaintiffs failed to file a response on any of the issues in the event that a continuance was not granted. The state court found that summary judgment was granted against Plaintiffs based upon "all grounds advanced by Dr. Shuput." Plaintiffs did not address any of those reasons in any kind of responsive pleading. In fact, in this case, Plaintiffs appear to take issue with whether or

not the mother of Putnam's friend was a CNA.  But, no such dispute was placed before the state court judge.

This court cannot conclude that the Plaintiffs' loss was caused by any alleged change in opinion by Swerdlow.  Accordingly, there is no basis for any of the claims asserted in this action. There is no need to analyze any of the remaining issues raised in Swerdlow's motion to dismiss. The court grants Swerdlow's motion to dismiss and dismisses this action with prejudice.

## CONCLUSION

Based on the above reasoning, Defendant's Motion to Dismiss is GRANTED.  Plaintiffs' Complaint is dismissed with prejudice, each party to bear their and his own fees and costs.  The Clerk of Court is directed to enter judgment in favor of Defendant.

DATED this 22nd day of May, 2006.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge